UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH SAVOIE,

     Plaintiff,

v.

SHARON OLIVER, SUSAN
McCAULEY, SHARYL
CHAMBERLIN, WINIFRED
ANGIR-SISCO, GRAND PRAIRIE
HEALTH SERVICES, WELLPATH,
and JOHN DOES 1-5,

     Defendants.

_____/

Case No. 4:23-cv-11357
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION TO**
**DENY DEFENDANTS' MOTION TO DISMISS (ECF No. 13)**
**AND**
**GRANT IN PART AND DENY IN PART DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 18, 23)**[1]

## I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Joseph

Savoie (Savoie), a prisoner represented by counsel, has sued the defendants listed

in the caption for violating his Eighth Amendment rights while he was incarcerated

---

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

at the Saginaw Correctional Facility (SRF) in Saginaw County, Michigan. (ECF

No. 1). All pretrial matters have been referred to the undersigned. (ECF No. 3).

Before the Court are the following motions:

- Motion to dismiss filed by Winifred Angir-Sisco (Angir-Sisco), Grand Prairie Healthcare Services (GPHS), and Wellpath LLC (Wellpath), (ECF No. 13),

- Motion for summary judgment filed by Sharyl Chamberlin (Chamberlin) and Susan McCauley (McCauley) (collectively "MDOC defendants"), (ECF No. 18), and

- Motion for summary judgment filed by Angir-Sisco, GPHS, Wellpath, and Sharon Oliver (Dr. Oliver) (collectively "healthcare defendants"), (ECF No. 23).

In their motion to dismiss, Angir-Sisco, GPHS, and Wellpath contend that

Savoie has not stated plausible claims against them. They are joined by Dr. Oliver

in filing a motion for summary judgment on the grounds that Savoie's claims are

not exhausted. The MDOC defendants have also filed a motion for summary

judgment on exhaustion. All of the motions are fully briefed.

For the reasons that follow, the undersigned RECOMMENDS that

defendants' motions for summary judgment be GRANTED IN PART and

DENIED IN PART, and that the motion to dismiss be DENIED. If these

recommendations are adopted, Angir-Sisco and Chamberlin would be dismissed

without prejudice based on a failure to exhaust. The case would continue against

McCauley and Dr. Oliver on Savoie's Eighth Amendment claims for deliberate

2

indifference, and against GPHS, and Wellpath on his *Monell* claim.[2]

## II.    Background

### A.    Allegations

As set forth in the complaint, Dr. Oliver is a doctor who worked at SRF at all relevant times in the employ of GPHS and/or Wellpath.  (ECF No. 1, PageID.2).  McCauley was a health unit manager (HUM) employed by the Michigan Department of Corrections (MDOC) at SRF.  Chamberlin was another MDOC employee at SRF.  GPHS and Wellpath are corporate entities that were contracted to provide healthcare services to inmates at MDOC facilities including SRF.  John or Jane Doe 1 was a nurse practitioner at SRF employed by GPHS and/or Wellpath, John or Jane Doe 2 may have been McCauley but if not, was an employee of MDOC, GPHS, and/or Wellpath at SRF, and John or Jane Does 3-5 were responsible for scheduling Savoie's offsite medical procedures and employed by MDOC.  (*Id.*, PageID.2-3).

Savoie alleges that he has suffered from numerous medical conditions including, COPD, psoriasis, severe injuries to his left knee and right ankle, and injuries to his spine.  (*Id.*).  Savoie was diagnosed with these and other maladies in April 2021, at another facility before he was transferred to SRF on May 28, 2021.

---

[2] Savoie's case will also continue against John Does 1-5, who have yet to be identified.

(*Id.*, PageID.4).  He was seen twice by healthcare staff that are not defendants in this case in June 2021, who noted issues with his left knee, right ankle, and psoriasis.  (*Id.*, PageID.4-5).  Days later, on June 25, 2021, Savoie sent a kite[3] complaining about delays in receiving medical treatment and identifying his medical issues.  (*Id.*, PageID.5).  McCauley responded to his kite the same day, stating that she and the SRF healthcare staff were aware of his issues, treating his psoriasis, and developing a treatment plan for his other issues.  (*Id.*).

On July 29, 2021, Savoie complained to another non-defendant nurse that his right ankle and left knee were not being treated and that he could no longer walk to the cafeteria.  (*Id.*).  Later, on August 5, 2021, Dr. Oliver noted Savoie's continuing complaints, numerous kites and grievances, and desire for definitive treatment.  (*Id.*, PageID.6).  On September 30, 2021, Dr. Oliver noted that Savoie told her he could not walk to the cafeteria due to the pain in his left knee.  (*Id.*).  She also noted that his psoriasis had worsened.  (*Id.*).

Savoie saw Dr. Oliver again on October 7, 2021, to be assessed for an MRI of his left knee.  Dr. Oliver noted eczema on the anterior legs/knees and dorsal arms/elbows.  (*Id.*).  Savoie had the MRI done on October 25, 2021, which showed

---

[3] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance.  *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

4

significant problems with his meniscus and severe osteoarthritis. (*Id.*). Dr. Oliver saw Savoie again on October 29, 2021, noting his severe psoriasis that was not improving with conservative treatment. Savoie said that he had used ultraviolet (UV) treatment prior to incarceration and that he was being "bullied" because of his wounds. (*Id.*). Savoie alleges that he offered to donate his tanning bed to MDOC so that he could use it to treat his psoriasis, but was refused. (*Id.*).

> On October 29, 2021, Dr. Oliver reviewed Savoie's left knee MRI, finding,
>
> Evidence of severe osteoarthritis in the medial femorotibial joint compartment of the left knee . . . [and] [h]orizontal intrameniscal degenerative tear in the posterior horn of the medial meniscus. The body of the medial meniscus is markedly displaced medially outward from the joint space due to severe osteoarthritis. Complex degenerative tears in the body and the anterior horn of the meniscus.

(*Id.*, PageID.7). At some point thereafter, Savoie was admitted to the Duane Waters Hospital for concerns of hypoxia. His doctor there, Shi-Yu Tan, M.D. (Dr. Tan), assessed Savoie's other health ailments as well. Dr. Tan found that Savoie had moderate to severe psoriasis and a history of chronic severe osteoarthritis of the left knee. Dr. Tan recommended an orthopedic consult and to consider a referral to dermatology for biologics if Savoie's psoriasis did not improve. (*Id.*).

Dr. Oliver saw Savoie again on December 6, 2021. (*Id.*). Savoie continued to complain of knee pain. He told Dr. Oliver there was no appreciable change in his psoriasis lesions since starting the medication methotrexate. (*Id.*). Dr. Oliver noted that Savoie's left knee pain, right ankle, and psoriasis were unimproved.

5

(*Id.*, PageID.8).

Dr. Oliver submitted a request for Savoie to have a consultation with an orthopedic surgeon that day.  Dr. Oliver noted that Savoie admitted to a motor vehicle accident that caused his cervical spine, right ankle, and left knee injuries. (*Id.*).  Savoie was sent to Orthopaedic Specialist of Lansing, P.L.L.C., where a right ankle fusion was recommended.  That treater also noted that Savoie's left knee was in "end stage arthrosis" and suggested total knee arthroplasty on the left. (*Id.*).  The complaint does not say when this consultation occurred, but the resulting notes were reviewed by Dr. Oliver on January 3, 2022.  (*Id.*).  Savoie sent a kite later that day to have someone grab his medications because he could not do so due to the pain.  (*Id.*).  He did not receive a response to his kite until almost two months later, on February 24, 2022, where a nurse stated that a chart review was sent to his healthcare provider for his request.  (*Id.*, PageID.9).

Meanwhile, on February 7, 2022, Savoie stated to Dr. Oliver that he was unable to walk to the cafeteria in the cold and had fallen on the ice.  (*Id.*).  Savoie sent a kite on February 25, 2022, requesting to stop taking methotrexate because it was causing him gastrointestinal issues and acid reflux.  (*Id.*).

Savoie was seen by the Sparrow Medical Group Orthopedics & Sports Medicine on March 8, 2022, but the group was unable to treat him because they did not have a secure wing for incarcerated individuals.  (*Id.*).  Dr. Oliver reviewed

6

this note on March 11, 2022, but failed to submit a request for consultation with a different orthopedic surgeon. (*Id.*). On March 28, 2022, Dr. Oliver saw Savoie and, at Savoie's request, discontinued the methotrexate prescription. (*Id.*). Dr. Oliver also noted new lesions on Savoie's back. (*Id.*). Dr. Oliver requested approval for Enbrel that day, but that request was deferred for treatment with infliximab, also known as Renflexis. (*Id.*, PageID.10).

Renflexis was approved for Savoie on March 30, 2022. However, on May 16, 2022, Dr. Oliver noted that Savoie had still not received the medication. (*Id.*). She also noted that Savoie's psoriatic lesions continued to spread and that he had multiple joint pains. (*Id.*). Dr. Oliver discussed scheduling Savoie's Renflexis with John or Jane Doe 2. Savoie did not receive the medication until three months later, in August 2022, and only after Savoie's right knee surgery was cancelled due to uncontrolled psoriasis. (*Id.*, PageID.11).

On May 18, 2022, Savoie sent a kite requesting a knee brace or to be transferred to a prison that will provide him with assistance. (*Id.*). He complained that his knee had locked up causing him to fall for the third time while at SRF, and that he had also been denied a wheelchair. In response, he was scheduled to have his knee evaluated. (*Id.*). He was evaluated on July 11, 2022, at Jackson Orthopaedics, where it was noted that he had exhausted conservative management and left knee surgical intervention was recommended. In the meantime, his

request for a wheelchair had been denied "due to inmate ambulating fine." (*Id.*).

Savoie was scheduled for left knee surgery on August 9, 2022. However, as explained above, his surgery was cancelled due to a psoriatic condition on the operative area. (*Id.*, PageID.12). Dr. Oliver made a note of this and that Savoie had still not received Renflexis, because the medication had to be administered offsite. (*Id.*). She submitted a request for intravenous administration of Renflexis at Duane Waters Hospital. (*Id.*).

On September 2, 2022, Angir-Sisco saw Savoie in response to a kite in which Savoie requested a wheelchair. His request was again denied because there was "[n]o indication for wheelchair as inmate is ambulatory." (*Id.*, PageID.13). Savoie sent a kite on September 11, 2022, complaining that after having written over 130 medical requests, McCauley, Dr. Oliver, and others had done nothing to help him. (*Id.*).

From February 7 to March 7, 2022, and again from May 2 to May 12, 2022, Dr. Oliver provided Savoie with a medical detail to have meals in his cell. (*Id.*, PageID.14). However, at all other times, Savoie was required to either skip meals or make the long, painful walk to the cafeteria. Savoie alleges that his lack of treatment has caused him physical pain and suffering, significant mental and emotional injuries, hopelessness, depression, fear, and embarrassment. (*Id.*). Savoie maintains that John or Jane Does 3-5 consistently failed to schedule his

8

medical procedures in a timely or appropriate manner.  (*Id.*, PageID.15).  He says that GPHS and Wellpath policies and procedures caused his rights to be violated, that they are inadequately staffed, and that they provide sub-constitutional services at the expense of inmates in order to cut costs, maximize profits, and win contracts with the government.  (*Id.*, PageID.15-16).

### B.    Grievances

MDOC defendants have attached Savoie's Step III grievance report to their motion.  (ECF No. 18-3).  The report reflects that Savoie had three relevant grievances that were pursued through Step III, but each was rejected as "vague" and therefore not reviewed on the merits.  Savoie argues that the grievances were improperly rejected and therefore exhaust his available administrative remedies.

SRF-22-06-0549-28B (SRF-549)

On June 4, 2021, Savoie filed the following Step I grievance:

> I've asked medical to move me to a facility that deals with people like me, low oxygen and in need of surgeries, I can't exercise here or move around without my oxygen going below 91% I've wrote over 100 med kites in the last year & 3 months for oxygen and I've asked "oliver Dr." about a wheelchair.  I'm told I do not fit the criteria, but they give them to people with sprained ankles?  I've been approve for total knee replacement and ankle fusion for no motion.  Can't sleep or get exercise and I've gained 40 pounds.  Need a medical diet.

(ECF No. 18-3, PageID.348 [sic throughout]).  Under "Date of Incident," Savoie wrote April 16, 2021 "until now."  (*Id.*).

MDOC's response at Step I stated that a grievance can be rejected if it is

"vague, illegible, contains multiple unrelated issues, or raises issues that are

duplicative of those raised in another grievance filed by the grievant[,]" and that

"[d]ates, times, places, and names of all those involved in the issue being grieved

are to be included." (*Id.*).  It then stated that "[t]his grievance is vague and being

rejected at Step I." (*Id.*).  Savoie appealed the grievance to Steps II and III, and the

rejection was upheld each time. (*Id.*, PageID.346-347).

SRF-22-08-0733-28B (SRF-733)

On August 7, 2022, Savoie filed another Step I grievance:

> I have Psoriasis on 60% of my body and have asked for Medical Help
> for it over a year and 4 months and all I have received is Hand Lotion
> and a couple times Betamethasone and methotrexate which made me
> extremely ill, my Doctor said.  Since Medical waited so long to treat it
> right I need U.V.B. treatments because topical steroids are for small
> area's [sic] and I have open wounds where I scratched it until it bleeds.
> . . .  I have been constantly harassed by inmates and have gotten into 3
> fights over inmates saying I shouldn't use the same shower.  I wear long
> john tops and bottoms so inmates will leave me alone and I stay in my
> room.  And now I have been told by Henry Ford Hospital that they can't
> do the surgery because SRF's medical dept neglected to take care of it
> the right way.  Still in pain and can hardly walk.

(*Id.*, PageID.344 [sic throughout]).  The "Date of Incident" was April 8, 2021, to

August 3, 2022. (*Id.*).

MDOC's Step I response was the same as before, noting that a grievance can

be rejected if it is vague and that "[d]ates, times, places, and names of all those

involved in the issue being grieved are to be included." (*Id.*).  It again stated that

"[t]his grievance is vague and being rejected at Step I." (*Id.*).  Savoie appealed the

10

grievance to Steps II and III, and the rejection was upheld each time. (*Id.*, PageID.342-343).

> SRF-22-10-0995-28B (SRF-995)

On October 31, 2022, Savoie grieved the following at Step I:

> not sure who is on the power kick, but this is my 4th grievance all denied so I'm not sure who is at fault Dr. Oliver or Susan McCauly or Grand Prairie Healthcare or Well Path or who ever is running Health Care Services but here I sit still in pain <u>needing multiple</u> surgeries with low oxygen <u>for 18 months</u> and over 150 medical requests later nothing has changed

(*Id.*, PageID.341 [sic throughout]). The "Date of Incident" was April 8, 2021, to October 28, 2022. (*Id.*).

MDOC's Step I response was substantially identical to the prior two Step I responses, above. (*Id.*). It concluded: "This grievance is vague. Grievance rejected at Step I." (*Id.*). Savoie appealed the grievance to Steps II and III, and the rejection was upheld each time. (*Id.*, PageID.339-340).

### III.   Legal Standards

#### A.   Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views

11

the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Savoie is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

12

B.     Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not

13

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich.

2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

## IV.    Discussion

### A.    Exhaustion of Administrative Remedies

#### 1.    Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly"

exhaust all "available" administrative remedies before filing a lawsuit challenging

prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93

(2006).  Proper exhaustion of administrative remedies "means using all steps that

the agency holds out, and doing so *properly* (so that the agency addresses the

issues on the merits)."  *Woodford*, 548 U.S. at 90 (emphasis in original) (internal

quotation marks and citations omitted).  Requiring exhaustion allows prison

officials an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court and produces a useful administrative

record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what

14

"proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The Michigan Department of Corrections (MDOC) has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a

specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ S (underlining omitted).

### 2. Application

#### a. Angir-Sisco and Chamberlin

Angir-Sisco and Chamberlin are not named in any of Savoie's grievances. As noted above, grievances must contain the dates, times, places, and *names* of all those involved.  *Reed-Bey v. Pramstaller*, 603 F.3d at 324.

16

> Although a failure to name a specific individual in a grievance may not always render exhaustion inadequate, especially where the grievance is addressed on the merits and not rejected as unduly vague, *a plaintiff fails to exhaust administrative remedies as to a particular defendant not identified in the grievance if the plaintiff specifically identifies other defendants by name and nothing in the grievance would put the unnamed defendants on notice*.

*Kensu v. Rapelje*, No. 12-11877, 2013 WL 1774637, at *4 (E.D. Mich. Apr. 25, 2013) (internal citations omitted) (emphasis added); *see also Vandiver v. Vasbinder*, No. 08-10508, 2012 WL 4355536, at *1 (E.D. Mich. 2012); *Walls v. O'Connor*, No. 12-11874, 2013 WL 572449, at *6 (E.D. Mich. Jan. 22, 2013), *report and recommendation adopted*, 2013 WL 571752 (E.D. Mich. Feb. 13, 2013).

As to Chamberlin, Savoie argues that references to her in his medical records are few and far between, and her identity was simply unknown at the time he filed any grievance that would have included her.  Additionally, Savoie argues that by grieving "whoever is running healthcare services" in SRF-995, Chamberlin was put on notice for the purpose of exhausting administrative remedies.  (ECF No. 21, PageID.366 (citing ECF No. 18-3, PageID.341)).

The undersigned is sympathetic to the plight of an inmate attempting to timely grieve prison officials without knowing their identities.  To that end, a court "may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the

defendant was involved." *Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at

*3 (E.D. Mich. Sept. 17, 2008) (citing *Binion v. Glover,* 2008 WL 4097407, at *4

(E.D. Mich. Aug. 29, 2008)); *see also Bailey v. Michigan Dep't of Corr.*, No. 19-

13442, 2020 WL 4934314, at *4 (E.D. Mich. Aug. 24, 2020) ("The failure to

identify a person by name does not preclude a finding of exhaustion 'as long as the

prisoner identifies a defendant based on the factual allegations.' " (quoting *Thomas

v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003))). "Where a prisoner is not able to

identify all appropriate personnel in compliance with the grievance procedure,

there is no failure to exhaust." *Benson v. Brunette*, No. 12-10095, 2013 WL

1301551, at *4 (E.D. Mich. Feb. 25, 2013), *report and recommendation adopted*,

2013 WL 1283476 (E.D. Mich. Mar. 28, 2013). As explained by the Eleventh

Circuit,

> "[§] 1997e(a) requires a prisoner to exhaust all 'available'
> administrative remedies, and implicit in that requirement is an
> obligation on the prisoner to provide those officials who will pass upon
> the grievance all the relevant information he has, including the identity
> of any officials he thinks have wronged him and any witnesses. But a
> prisoner cannot provide that which he does not have; he cannot identify
> those whose identities are unknown to him. Pegging our thinking to the
> words of the statute, a grievance procedure that requires a prisoner to
> provide information he does not have and cannot reasonably obtain is
> not a remedy that is 'available' to the prisoner."

*Merriweather v. Zamora*, No. 04 CV 71706 DT, 2006 WL 2711809, at *9 (E.D.

Mich. Sept. 21, 2006) (quoting *Brown v. Sikes*, 212 F.3d 1205, 1207-8 (11th Cir.

2000)).

That said, Savoie's grievance against "whoever is running healthcare services" in SRF-995 was not specific enough to put Chamberlin on notice and does not suffice to exhaust his claims against her.  Savoie did not identify Chamberlin by name, title, or actions that are attributable to Chamberlin in the complaint.

Moving to Angir-Sisco, healthcare defendants argue that there is no grievance naming Angir-Sisco or grieving any act that would resemble what Angir-Sisco is accused of in the complaint.  Angir-Sisco makes one factual appearance in the complaint, in which it states that she saw Savoie on September 2, 2022, regarding his kite about getting a wheelchair.  (ECF No. 1, PageID.13).  The kite response said there was "[n]o indication for wheelchair as inmate is ambulatory."  (*Id.*).

It is unclear from the allegations whether Angir-Sisco was responsible for the wheelchair denial.  In any event, the only grievance referring to the wheelchair denial is SRF-549.  (ECF No. 18-3, PageID.348).  In that grievance, Savoie places the blame for his denial solely on Dr. Oliver.  (*Id.*).  Angir-Sisco is not mentioned by name, title, or role in this or any other grievance on the Step III report.  Furthermore, Savoie does not address this argument in his response.  *See* ECF No. 25.  He therefore waives the argument that there is an exhausted claim against Angir-Sisco.  *See, e.g.*, *Al Ghadeer Meat Mkt. Inc. v. United States Dep't of Agric.*,

19

*Food & Nutrition Serv.*, No. 2:19-CV-12131, 2022 WL 805864, at *7 (E.D. Mich.

Mar. 15, 2022) ("Plaintiffs waived the argument by not addressing it in their

response brief.").  For these reasons, Angir-Sisco and Chamberlin should be

dismissed without prejudice for Savoie's failure to exhaust administrative

remedies.

> b.  Dr. Oliver, McCauley, GPHE, and Wellpath

The rest of the defendants have been named in one or more of Savoie's

rejected grievances.  Dr. Oliver is sufficiently named in all three grievances, and

McCauley, GPHS, and Wellpath are unarguably named in SRF-995.[4]  The

question, then, is whether these grievances, most importantly SRF-995, were

properly rejected for failing to follow MDOC grievance regulations.

Inmates must follow administrative procedures *properly* in order to exhaust

their remedies.  *Woodford*, 548 U.S. at 90.  However, "the Court is not required to

blindly accept the state's application of the procedural rule[s]."  *Reeves v.

Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012),

*report and recommendation adopted in relevant part*, 2012 WL 3151594 (E.D.

---

[4] Additionally, entities such as GPHS and Wellpath need not be grieved, as administrative remedies are unavailable as to them.  *See Annabel v. Mich. Dep't of Corr.*, No. 1:18-CV-914, 2020 WL 919700, at *1 (W.D. Mich. Feb. 26, 2020), *Ford v. Jindal*, No. 19-13207, 2020 WL 7391293, at *3 (E.D. Mich. Dec. 1, 2020), *report and recommendation adopted*, 2020 WL 7389110 (E.D. Mich. Dec. 16, 2020).

Mich. Aug. 2, 2012).

Under MDOC Policy Directive 03.02.130 ¶ J, "A grievance shall be rejected by the Grievance Coordinator if: 1. It is vague, illegible, or contains multiple unrelated issues." (ECF No. 18-2, PageID.328). Also, as mentioned above, "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included" in prisoner grievances. MDOC Policy Directive 03.02.130 ¶ S (*Id.*, PageID.330).

Savoie argues that his grievances establish the necessary times, people, and information such that their rejection for vagueness was improper. Thus, he argues, his *available* administrative remedies were exhausted.

As to SRF-995, Savoie notes that the "who" is clear: Dr. Oliver, McCauley, GPHS, and Wellpath are named in the grievance. (ECF No. 18-3, PageID.341). The "what," similarly, includes Savoie's ongoing pain, lack of prescribed surgeries (left knee replacement and right ankle fusion), and low oxygen levels (which are not at issue in this case). (*Id.*). The "when," as indicated at the top of Savoie's grievance, is April 8, 2021 to October 23, 2022. (*Id.*).

Defendants take issue with the broadness of Savoie's grievance. But broad is not vague. Courts have previously found continuous or ongoing Eighth Amendment violations properly exhausted by grievances, even where the "date of incident" was simply noted as "ongoing." *See Ellis v. Vadlamudi*, 568 F. Supp. 2d

21

778, 779 (E.D. Mich. 2008).  SRF-995 raises, at the very least, "a question of fact

because an improper rejection would constitute exhaustion."  *Bailey*, 2020 WL

4934314, at *5 (E.D. Mich. Aug. 24, 2020) (citing *Johannes v. Washington*, No.

14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016)).  The burden is

on defendants to "show that every reasonable jury would think the rejections were

proper."  *Johannes*, at *6.  Here, a reasonable jury could find the claims in SRF-

995 to be exhausted.

For the same reasons, there is a question of fact as to whether SRF-549 and

SRF-733 were properly rejected as vague.  Like SRF-995, those grievances spoke

to ongoing issues regarding a lack of treatment, and MDOC was not specific in its

reasons for finding them vague.  SRF-549 named Dr. Oliver and added Savoie's

complaint regarding his wheelchair denial.  (*Id.*, PageID.348).  SRF-733 named Dr.

Oliver and "SRF Medical"[5] and stated Savoie's claims regarding lack of treatment

for psoriasis and that this caused his knee surgery to be canceled.  (*Id.*,

PageID.344).  Thus, it cannot be said as a matter of law that Savoie's claim against

Dr. Oliver for being denied a wheelchair and receiving inadequate treatment for his

psoriasis is unexhausted at this time.  The same is true for his claims against GPHS

and Wellpath regarding psoriasis treatment.  In short, defendants have not met their

---

[5] The undersigned finds a genuine issue of fact whether this could be in reference
to GPHS and/or Wellpath.

summary judgment burden for exhaustion.

### B.   Savoie's *Monell* Claims

Angir-Sisco, GPHS, and Wellpath's motion to dismiss is also before the Court.  As stated above, Savoie did not exhaust any claims against Angir-Sisco. Therefore, the undersigned will only consider defendants' argument that Savoie has failed to state a supervisory liability claim against GPHS and Wellpath.

### 1.   Parties' Arguments

In the complaint, Savoie says that one or more of the individual defendants are employed by GPHS and/or Wellpath, who have been contracted to provide healthcare services by MDOC.  As to liability, Savoie says that GPHS and Wellpath maintain policies and procedures that caused his deprivation of Eighth Amendment rights.  Specifically, he alleges that the entities maintain a policy of inadequate staffing, failing to treat medical conditions under the guise of conservative treatment, and denying or delaying medically necessary treatments in order to maximize profit without regard to the unnecessary pain and suffering that this causes incarcerated individuals under their care.  (ECF No. 1, PageID.15-16). In support of this theory, Savoie says that GPHS and Wellpath have *reduced* medical staffing from the prior levels under MDOC's former medical services contractor, Corizon, despite Corizon having received deficiency notices from MDOC for its own delays in providing medical treatment.  (*Id.*, PageID.16).

23

GPHS and Wellpath move to dismiss these claims, based on *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny.  They argue that Savoie's claims are vague and fail to allege specific policies or a pattern of delays that affected him and other similarly situated inmates.  In response, Savoie argues that it need not be a written policy; GPHS and Wellpath can also be held liable where there is a custom of unconstitutional conduct that operates with the force of law, or where the entity knows that inmates face a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it.

In support of his claims, Savoie attached to his response an excerpt from the meeting minutes of a State Administrative Board meeting where Corizon's deficiencies were discussed with respect to awarding the new MDOC contract to GPHS and Wellpath.  (ECF No. 15-2).  He also attached a copy of the contract between MDOC and GPHS.  (ECF No. 15-3).

GPHS and Wellpath argue that this still fails to allege either an official policy that deprived Savoie, or knowledge of a clear pattern of unconstitutional activities that GPHS and Wellpath took no action to rectify.  They also argue that Savoie's attachments should not be considered as they are outside of the pleading.

2.      Standard

Liability under § 1983 must be based on more than merely the right to

control employees. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-6 (1981); *Monell*, 436 U.S. at 694-5.  To make out a claim under § 1983, a plaintiff must allege that "each defendant officer, through his or her own individual actions, *personally violated* plaintiff's rights[.]" *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original).  "It is well-settled that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*.' " *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 676).  The Sixth Circuit "ha[s] long held that supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross*, 818 F.3d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

When the acts of individual employees represent a municipal custom or policy, a municipal defendant can be held liable for the underlying acts.  *Monell*, 436 U.S. at 690-2.  Private defendants like Wellpath and GPHS can be held liable as well when they contract with the State to perform a traditional state function. *Hamer v. Wellpath*, No. 2:22-CV-12500, 2022 WL 16744370, at *4 (E.D. Mich. Nov. 7, 2022).  Such a claim can be made where a plaintiff alleges one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence

25

of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citation omitted).

### 3.   Analysis

At the onset, the undersigned need not resolve whether Savoie's exhibits can be considered because they merely provide factual support for his allegations, which the undersigned takes as true on a motion to dismiss. *Keys v. Humana, Inc.*, 684 F.3d at 608.

Savoie summarizes his *Monell* claims as follows:

1) a policy of inadequate staffing;

2) a policy of denying adequate treatment under the guise of conservative treatment; and

3) a policy of denying and delaying medical treatment for the purpose of maximizing profits.

(ECF No. 15, PageID.109  (citing ECF No. 1, PageID.15-16, ¶¶ 85-87)).

Arguments (2) and (3) fall short of the mark.  "[D]amage claims against government officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)).  Though

Savoie takes issue with his "conservative treatment," there is no factual basis that the individuals responsible for this treatment (Dr. Oliver, McCauley, and John Does) were guided by official or unofficial policy from their employer(s). Savoie admits as much in his response, stating that "it is hard to imagine that Mr. Savoie's experience was the result of anything other than [GPHS and Wellpath's] policies." (ECF No. 15, PageID.112). But Savoie "must set forth facts showing the existence of an offending custom or policy and mere conclusory allegations are insufficient." *Bhutta v. Bush*, No. 05-CV-70433-DT, 2006 WL 568343, at *4 (E.D. Mich. Feb. 3, 2006) (internal quotation marks and citation omitted). Instead, Savoie only speculates that the acts of individual defendants are custom or policy driven.

Similarly, Savoie's contention that GPHS and Wellpath provide sub-constitutional care in order to maximize profits is wholly conclusory. It is undisputed that GPHS and Wellpath are for-profit organizations; however, this does not provide a basis for their alleged policy or custom of inaction in order to cut costs. It is not plausible to presume that a healthcare provider will violate its consumers' constitutional rights just because it seeks profit. As GPHS and Wellpath note, Savoie has not alleged that the medical care delays he experienced were a widespread, ongoing issue that even one other prisoner faced. He "anticipates that discovery will disclose a pattern of delays and denials of treatment for other incarcerated persons at SRF and throughout the MDOC system." (*Id.*,

PageID.114).  The pleading standards of Federal Rule of Civil Procedure 8 do not

"unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions."  *Iqbal*, 556 U.S. at 678-79.

Nevertheless, Savoie has stated a claim that GPHS and Wellpath are

inadequately staffed to such an extent that deficient healthcare is either inevitable,

or known and uncorrected.  Savoie's allegations against the individual defendants

spell out a plausible inference that part of his mistreatment was due to inadequate

staffing levels.  He alleged, for instance, that days would pass between his

submission of kites for medical care and the responses; that the responses did not

address his concerns; and that on one occasion, he was sent to a facility for surgery

that could not accommodate prisoners.  He also alleges a months-long delay

between the approval of his psoriasis medication and his receiving the medication.

This allegedly resulted in his knee surgery being cancelled due to a psoriasis

outbreak on the operative area.  Savoie also specifically alleges that GPHS and

Wellpath reduced medical staff from its previous levels after getting the MDOC

contract, and that the previous medical staffing levels were already an issue under

Corizon.

In *Pewitte v. Hiniger*, No. 3:17-CV-00822, 2020 WL 2218754, at *1 (M.D.

Tenn. May 6, 2020), *report and recommendation adopted sub nom. Pewitte v.

Pratt*, 2020 WL 5105404 (M.D. Tenn. Aug. 31, 2020), an inmate alleged that a

28

contracted healthcare provider, Correct Care Solutions (CCS), "fail[ed] to maintain adequate staffing levels to ensure that inmates had access to keep-on-person medications and glucose monitoring during lockdowns[.]"  The court found that the plaintiffs claim—that CCS had an unwritten policy, practice, or custom of condoning insufficient staffing levels—properly stated a *Monell* claim, and that CCS's practice to have nurses visit inmates' units during lockdowns did not entitle CCS to summary judgment.  *Id.* at *3.  CCS's defense did not address the plaintiffs claim that "CCS maintained inadequate staffing levels to *implement* this practice." *Id.* (emphasis in original).

Similarly, here, Savoie has alleged that GPHS and Wellpath have failed to provide the number of staff necessary to implement the constitutional treatment of inmates.  This was allegedly done purposely in order to save money, or knowingly in the face of sub-constitutional medical care.  Both claims have been properly made under *Monell*, and Savoie has provided sufficient detail as to the claims to survive defendants' 12(b)(6) motion.  Savoie's allegations provide fair notice to GPHS and Wellpath of what his claim is and the grounds upon which it rests, *Twombly*, 550 U.S. at 555, and should not be dismissed.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motions for summary judgment, (ECF Nos. 18, 23), be GRANTED IN

PART and DENIED IN PART, and that the motion to dismiss, (ECF No. 13), be

DENIED.  If these recommendations are adopted, Angir-Sisco and Chamberlin

would be dismissed without prejudice based on a failure to exhaust.  The case

would continue against McCauley and Dr. Oliver on Savoie's Eighth Amendment

claims for deliberate indifference, and against GPHS and Wellpath on his *Monell*

claim.

Dated: December 13, 2023               s/Kimberly G. Altman
Detroit, Michigan                      KIMBERLY G. ALTMAN
                                       United States Magistrate Judge


## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 13, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
